```
               UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF NEW HAMPSHIRE
```

Ryan Joseph Swain

    v.                                      Case No. 18-cv-145-PB
                                                Opinion No. 2018 DNH 209

Nancy A. Berryhill, Acting
Commissioner, Social
Security Administration


**O R D E R**

Ryan Swain moves to reverse the decision of the Acting Commissioner of the Social Security Administration ("SSA") to deny his applications for Social Security disability insurance benefits, or DIB, under Title II of the Social Security Act, 42 U.S.C. § 423, and for supplemental security income, or SSI, under Title XVI, 42 U.S.C. § 1382. The Acting Commissioner, in turn, moves for an order affirming her decision. For the reasons that follow, this matter is remanded to the Acting Commissioner for further proceedings.

**I. Standard of Review**

The applicable standard of review in this case provides, in pertinent part:

> The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .

42 U.S.C. § 405(g) (setting out standard of review for decisions on claims for DIB); see also 42 U.S.C. § 1383(c)(3) (applying § 405(g) to SSI decisions). However, I "must uphold a denial of social security disability benefits unless 'the [Acting Commissioner] has committed a legal or factual error in evaluating a particular claim.'" Manso-Pizarro v. Sec'y of HHS, 76 F.3d 15, 16 (1st Cir. 1996) (per curiam) (quoting Sullivan v. Hudson, 490 U.S. 877, 885 (1989)).

## II. Background

The parties have submitted a Joint Statement of Material Facts. That statement, document no. 8, is part of the court's record and will be summarized here, not repeated in full.

Swain graduated from Boston University in 2011. He remained in Boston until he moved in with his parents in October of 2012. In January of 2017, Swain was working: (1) four hours a week as a math tutor; (2) five hours a week as a classroom paraprofessional at the school where his mother worked as a nurse; and (3) 10 hours a week as a recess monitor, also at his mother's school. At the hearing he received after the SSA denied his applications, Swain testified that he was late for his recess-monitor job two or three times a week, but that the school accommodated his inability to get to work on time.

In November of 2011, Swain saw his primary-care provider, Dr. Joseph Nosiff, complaining of depression. Dr. Nosiff gave Swain a diagnosis of "depressive disorder not elsewhere classified,"

Administrative Transcript (hereinafter "Tr.") 362, and later prescribed him anti-depressants. In addition to receiving medication for his mental impairments from both Dr. Nosiff and a psychiatrist, Swain has also received counseling and therapy from psychologists and psychiatrists.

In May of 2013, Swain was picked up by the police, who found him wandering the streets in the middle of the night. They transported him to a hospital emergency room where he was diagnosed with recurrent severe major depressive disorder, without psychotic features.

In June of 2013, Dr. Bruce Altman, a psychologist, referred Swain to Dr. Karen Pearson for psychological testing.[1] In the summary of her Psychological Testing Report, Dr. Pearson stated:

> [W]hat is seen is supportive of a Major Depressive Episode without psychotic features in a young man with Generalized Anxiety Disorder. There is a situational piece to Ryan's current dysfunction and thus an Adjustment Disorder with Mixed Anxiety and Depression may layer on top of that which is more biologically based. Finally . . . it would appear that Ryan has prominent dependent, schizotypal and obsessive compulsive personality features.

Tr. 316.

---

[1] In the decision from which Swain appeals, the Administrative Law Judge referred to this as a "consultative examination," Tr. 31, but because it pre-dated Swain's applications for benefits, it was probably not a consultative examination within the scope of the applicable regulations, which define "[a] consultative examination [as] a physical or mental examination or test purchased for [a claimant] at [the SSA's] request," 20 C.F.R. §§ 404.1519 & 416.919.

In August of 2013, Swain filed applications for DIB and SSI, claiming that he had been disabled since July of 2011 as a result of depression, anxiety, attention-deficit disorder, and obsessive-compulsive disorder.

In December of 2015, Dr. Edward Martin, a non-examining state-agency psychological consultant, reviewed Swain's medical records, including a November 2015 Mental Impairment Questionnaire completed by Dr. Christianna Skoczek, a treating psychologist. Based upon his review of those records, Dr. Martin performed a psychiatric review technique ("PRT") assessment.[2] In performing the PRT, Dr. Martin considered two impairments, affective disorders and anxiety disorders. He determined that Swain had: (1) mild restrictions in his activities of daily living; (2) mild difficulties in maintaining social functioning; (3) mild difficulties in maintaining concentration, persistence or pace; and (4) no repeated episodes of decompensation, each of extended duration. Based upon those findings, Dr. Martin determined that neither of Swain's two mental impairments was severe enough to qualify as a "listed" impairment under the applicable SSA regulations, and he also concluded that Swain's impairments did not even meet the lesser standard under which an impairment

---

[2] The SSA uses the PRT to evaluate the severity of mental impairments. See 20 C.F.R. §§ 404.1520a & 416.920a.

qualifies as severe.[3]  See Tr. 89, 99.  Finally, Dr. Martin did not assess Swain's mental residual functional capacity ("RFC"),[4] presumably because he had found that Swain had no severe mental impairments.

In December of 2015, the SSA denied Swain's claims.  He requested a hearing before an Administrative Law Judge ("ALJ"), and one was scheduled for January of 2017.

In December of 2016, Dr. Skoczek, who had treated Swain twice a week since January of 2015, completed a form captioned "Mental Impairment Questionnaire (RFC & Listings)."  She indicated diagnoses of major depressive disorder and anxiety.

With respect to the criteria the SSA uses to determine whether those impairments are severe enough to qualify as listed impairments, Dr. Skoczek found that Swain had: (1) marked restrictions in his activities of daily living; (2) marked difficulties in maintaining social functioning; (3) frequent deficiencies in maintaining concentration, persistence or pace;

---

[3] The SSA regulations define a "severe" impairment as "any impairment or combination of impairments which significantly limits [a person's] physical or mental ability to do basic work activities."  20 C.F.R. §§ 404.1520(c) & 416.920(c).

[4] "An applicant's residual functional capacity 'is the most [he or she] can still do despite [his or her] limitations.'" Purdy v. Berryhill, 887 F.3d 7, 10 n.2 (1st Cir. 2018) (quoting 20 C.F.R. § 416.945(a)(1), a regulation governing claims for SSI that is worded identically to 20 C.F.R. § 404.1545(a)(1), which governs claims for DIB) (brackets in the original).

5

and (4) continual episodes of deterioration or decompensation in work or work-like settings.

With respect to Swain's mental RFC, Dr. Skoczek opined that he had: (1) an unlimited or very good capacity for one of 16 mental abilities and aptitudes necessary to do unskilled work; (2) a good capacity for eight of them; (3) a fair capacity for four of them; and (4) a variable capacity for the remaining two. With respect to the five mental abilities and aptitudes necessary to perform particular types of jobs, Dr. Skoczek opined that Swain had a fair to good capacity for each of them. Finally, Dr. Skoczek opined that Swain would be absent from work more than three times a month because of his mental impairments or treatment for them.

In January of 2017, Dr. Richard Naimark, a psychiatrist who had treated Swain monthly since March of 2013, completed a Mental Residual Functional Capacity Assessment on Swain. With respect to understanding and memory, Dr. Naimark opined that Swain had moderate limitations in one of three listed abilities and marked limitations in the other two.[5] With respect to sustained concentration and persistence, Dr. Naimark opined that Swain had moderate limitations in one of eight listed abilities, marked limitations in four abilities, and extreme limitations in the

---

[5] The form Dr. Naimark completed defines a "marked" limitation as one in which "[t]he ability to function . . . is seriously limited." Tr. 499.

remaining three.[6]  With respect to social interaction, Dr. Naimark opined that Swain had mild limitations in one of five listed abilities, marked limitations in three abilities, and extreme limitations in the remaining ability.  With respect to adaptation, Dr. Naimark opined that Swain had marked limitations in one of five listed abilities and extreme limitations in the other four.  Finally, he opined that Swain's limitations would interfere with his ability to work on a regular and sustained basis at least 20 percent of the time, and that he would miss "many" days of work each month because of his mental impairments or treatment for them.

Just before his hearing, Swain submitted several pieces of evidence to the ALJ, only some of which he accepted, but because the ALJ's decision on that matter is not a subject of claimant's appeal, there is no need to describe that evidence.

At Swain's hearing, the ALJ took testimony from a vocational expert ("VE"), to whom the ALJ posed three hypothetical questions.  In the first one, the ALJ asked the VE to consider

> an individual of the same age, education, [and] work experience as the Claimant [and who] has no exertional limitations but is limited to simple routine work making simple work-related decisions; occasional interaction with the supervisors, coworkers, and the general public; and time off task can be accommodated by normal breaks and lunch periods.

---

[6] The form Dr. Naimark completed defines an "extreme" limitation as one in which "[t]he ability to function . . . is precluded."  Tr. 499.

Tr. 77. The VE testified that the person the ALJ described could not perform Swain's past work but could perform the jobs of cleaner-housekeeper, dishwasher, and trash collector. In his second hypothetical question, the ALJ posited a person with the same limitations as the person in the first question, but who "would be off task 5 percent of the time in an eight-hour work day." Tr. 79. The VE testified that the additional limitation would have no effect on a person's ability to do the three jobs he had previously identified. In his third hypothetical, the ALJ posited a person with the same limitations as the person in the second question, but who could "be expected to be absent from work three or more days a month." Id. The VE testified that there are no jobs that could be performed by a person who would be absent from work that frequently. Finally, in response to a question from Swain's counsel, the VE testified that a person who was 10 to 15 minutes late for work, four or more times a month, would be precluded from working.

After the hearing, the ALJ issued a decision in which he found that Swain: (1) had two severe impairments, "affective disorder and anxiety disorder," Tr. 27; but (2) did "not have an impairment or combination of impairments that [met] or medically equal[ed] the severity of one of the listed impairments" in the Social Security regulations, id. The ALJ gave Swain the following RFC:

> [T]he claimant has the residual functional capacity to
> perform a full range of work at all exertional levels
> but with the following nonexertional limitations: the
> individual is limited to simple, routine work, making
> simple work-related decisions. The individual can
> occasionally interact with supervisors, co-workers, and
> the general public. Time off task can be accommodated
> by normal breaks and lunch periods.

Tr. 29-30. In his discussion of Swain's RFC, the ALJ said that he was not persuaded by Dr. Skoczek's opinion and found that Dr. Naimark's opinion had little probative value. He concluded his discussion of the opinion evidence this way:

> Additional medical evidence received in the course of
> developing the claimant's case for review at the
> hearing, as well as evidence in the form of credible
> testimony at the hearing, consistent with medical
> evidence in the record justifies a conclusion that the
> claimant's impairments are more limiting that was
> concluded by the state examiner, Dr. Martin Ph.D.
> Overall, the evidence as described above, supports the
> finding that the claimant is more limited than Dr.
> Martin determined but not as limited as alleged by other
> medical sources.

Tr. 33 (citations omitted).

Based upon the RFC the ALJ assigned Swain and the testimony of the VE, the ALJ determined that Swain was capable of performing the jobs of cleaner-housekeeper, dishwasher, and trash collector and, as a consequence, was not disabled. Swain appealed his unfavorable decision to the SSA's Appeals Council ("AC"), which declined review. The AC also declined to consider several pieces of new evidence that Swain had attempted to submit, but because the AC's decision on that matter is not a subject of claimant's appeal, there is no need to describe that evidence.

9

**III. Discussion**

A. <u>The Legal Framework</u>

To be eligible for DIB, a person must: (1) be insured for such benefits; (2) not have reached retirement age; (3) have filed an application; and (4) be under a disability. 42 U.S.C. § 423(a)(1)(A)-(D). To be eligible for SSI, a person must be aged, blind, or disabled, and must meet certain requirements pertaining to income and assets. 42 U.S.C. § 1382(a). The only question in this case is whether the ALJ correctly determined that Swain was not under a disability from July 1, 2011, through March 15, 2017, which is the date of the ALJ's decision.

To decide whether a claimant is disabled for the purpose of determining eligibility for either DIB or SSI, an ALJ is required to employ a five-step sequential evaluation process. <u>See</u> 20 C.F.R. §§ 404.1520 (DIB) & 416.920 (SSI).

> The steps are: 1) if the [claimant] is engaged in substantial gainful work activity, the application is denied; 2) if the [claimant] does not have, or has not had within the relevant time period, a severe impairment or combination of impairments, the application is denied; 3) if the impairment meets the conditions for one of the "listed" impairments in the Social Security regulations, then the application is granted; 4) if the [claimant's] "residual functional capacity" is such that he or she can still perform past relevant work, then the application is denied; 5) if the [claimant], given his or her residual functional capacity, education, work experience, and age, is unable to do any other work, the application is granted.

Purdy v. Berryhill, 887 F.3d 7, 10 (1st Cir. 2018) (quoting Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001); citing 20 C.F.R. § 416.920).

At the first four steps in the sequential evaluation process, the claimant bears both the burden of production and the burden of proof. See Purdy, 887 F.3d at 9 (citing Freeman v. Barnhart, 274 F.3d 606, 608 (1st Cir. 2001)); see also Bowen v. Yuckert, 482 U.S. 137, 146 (1987). He must prove he is disabled by a preponderance of the evidence. See Mandziej v. Chater, 944 F. Supp. 121, 129 (D.N.H. 1996) (citing Paone v. Schweiker, 530 F. Supp. 808, 810-11 (D. Mass. 1982)).[7] Finally,

> [i]n assessing a disability claim, the [Acting Commissioner] considers objective and subjective factors, including: (1) objective medical facts; (2) [claimant]'s subjective claims of pain and disability as supported by the testimony of the claimant or other witness; and (3) the [claimant]'s educational background, age, and work experience.

Mandziej, 944 F. Supp. at 129 (citing Avery v. Sec'y of HHS, 797 F.2d 19, 23 (1st Cir. 1986); Goodermote v. Sec'y of HHS, 690 F.2d 5, 6 (1st Cir. 1982)).

B. Swain's Claims

Swain claims that: (1) the ALJ and/or the AC erred at step 3 of the sequential evaluation process by failing to find that his

---

[7] At step 5, the burden of proof shifts to the Acting Commissioner, see Seavey, 276 F.3d at 5 (citing Arocho v. Sec'y of HHS, 670 F.2d 374, 375 (1st Cir. 1982)), but the Acting Commissioner's step 5 determination is not at issue here, so there is no need to describe the mechanics of step 5.

depression met the conditions for the impairment described in Listing 12.04 in the Social Security regulations;[8] and (2) the ALJ erred in assessing his RFC. Swain's second claim warrants a remand.

"With a few exceptions . . ., an ALJ, as a lay person, is not qualified to interpret raw data in a medical record." Manso-Pizarro, 76 F.3d at 17 (citing Perez v. Sec'y of HHS, 958 F.2d 445, 446 (1st Cir. 1991); Gordils v. Sec'y of HHS, 921 F.2d 327, 329 (1st Cir. 1990)). Thus, when a claimant's RFC is at issue, and the ALJ must measure the claimant's capacities, "an expert's RFC evaluation is ordinarily essential unless the extent of functional loss, and its effect on job performance, would be apparent even to a lay person." Manso-Pizarro, 76 F.3d at 17 (quoting Santiago v. Sec'y of HHS, 944 F.2d 1, 7 (1st Cir. 1991)). An expert's RFC evaluation is typically presented in the form of a medical opinion, and when considering an application for benefits, the SSA is obligated to "evaluate every medical opinion [it] receive[s]," 20 C.F.R. §§ 404.1527(c) & 416.927(c).

For applications such as Swain's, which was filed before March 27, 2017, medical opinions are evaluated according to the factors described in 20 C.F.R. §§ 404.1527(c)(1)-(6) &

---

[8] After Swain's hearing, but before the ALJ issued his decision, Listing 12.04 was changed from "affective disorders" to "depression, bipolar, and related disorders," and the conditions for establishing a listing-level impairment under that listing changed as well.

416.927(c)(1)-(6).[9]  Moreover, because Drs. Skoczek and Naimark are both treating sources, their opinions are "entitled to controlling weight if they are 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and [are] not inconsistent with the other substantial evidence in [Swain's] case record." McCormick v. Berryhill, No. 16-cv-321-LM, 2017 WL 4220449, at *5 (D.N.H. Sept. 22, 2017) (quoting 20 C.F.R. §§ 404.1527(c)(2) & 416.927(c)(2)).  But even when an ALJ does not give controlling weight to the opinion of a treating source, he must give good reasons for the amount of weight he does give it. See 20 C.F.R. §§ 404.1527(c)(2) & 416.927(c)(2).

Here, Swain's RFC is at issue; he claims that the ALJ erred in assessing his RFC by "fail[ing] to take into account the opinion evidence provided by [his] treating psychiatrist [Dr. Naimark] and [his treating] psychologist [Dr. Skoczek]," Cl.'s Mem. of Law (doc. no. 6-1) 3.  That opinion evidence, in turn, appears in several documents, including two the ALJ considered, Dr. Skoczek's December 2016 Mental Impairment Questionnaire and Dr. Naimark's January 2017 Mental Residual Functional Capacity Assessment.  While the ALJ devoted a full paragraph of his decision to each of those two documents, he did not adequately address the RFC opinions in Dr. Skoczek's questionnaire.

---

[9] For applications filed after March 27, 2017, different regulations apply, i.e., 20 C.F.R. §§ 404.1520c & 416.920c.

This is what the ALJ had to say about the opinions in Dr. Skoczek's questionnaire:

> Dr. Skoczek surmised the claimant has marked restrictions in activities of daily living, maintaining social functioning, and concentration, persistence and pace. Dr. Skoczek suggested the claimant[] experienced "continual" episodes of decompensation, which waxed and waned. I am not persuaded by this assessment, as it is not supported by the overall record of evidence. As discussed [in] detail throughout this decision, the claimant's mental status examinations showed no more than moderate findings (See Ex. 5F). The claimant simultaneously maintained multiple part-time jobs. Finally, by its very definition, there is no evidence that the claimant experienced a single episode of decompensation, never mind "continual" episodes.

Tr. 32. The problem with the ALJ's evaluation of the opinions in Dr. Skoczek's questionnaire is that he said nothing about her opinions on Swain's RFC.

The caption of the form that Dr. Skoczek completed indicates that it was designed for use in conducting both PRT assessments and RFC assessments, which are two different things, see Social Security Ruling 96-8p, 1996 WL 374184, at *4 (S.S.A. July 2, 1996) (explaining that the PRT is used to assess severity at step 2 and to determine whether an impairment meets or medically equals a listing at step 3, while "[t]he mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments, and summarized on the PRT [form]").

Here, while Dr. Skoczek addressed issues pertaining to both her PRT analysis and Swain's RFC in her questionnaire, it is clear that the ALJ limited his discussion to the PRT aspect of Dr. Skoczek's questionnaire, see 20 C.F.R. §§ 404.1520a(c)(3) & 416.920a(c)(3) (2016) (describing components of the PRT assessment in force when Dr. Skoczek completed her questionnaire).[10] In other words, the ALJ said nothing about the opinions that Dr. Skoczek expressed in the portion of her form devoted to Swain's RFC, including her opinion that he would be absent from work more than three times a month due to his mental impairments or treatment for them. Given the ALJ's obligation to evaluate every opinion in Swain's case file, see 20 C.F.R. §§ 404.1527(c) & 416.927(c), his failure to address Dr. Skoczek's opinions on Swain's RFC merits a remand. A remand seems especially appropriate in light of: (1) Dr. Skoczek's opinion that Swain would be absent from work more than three times a month because of his impairments or treatment for them; and (2) the VE's testimony, in response to a question from the ALJ, that three or more absences per month would preclude all employment. See Hunt v. Colvin, No. 16-cv-159-LM, 2016 WL 7048698, at *8 (D.N.H. Dec. 5, 2016) (remanding where, among other things, VE testified that four absences per month would preclude

---

[10] The regulation governing the PRT was amended, effective January 18, 2017, to track the simultaneous changes to the mental-impairment listings. See note 8, supra.

15

all work but ALJ failed to address treating-source opinion that claimant would be absent from work four or more days per month).

Of course, the ALJ did evaluate the PRT aspect of Dr. Skoczek's questionnaire, but even if I were to construe the ALJ's reasons for discounting Dr. Skoczek's PRT opinions as reasons for discounting her RFC opinions, the ALJ's decision falls short of the mark. As noted, an ALJ is obligated to give good reasons for the weight he gives a medical opinion from a treating source. See 20 C.F.R. §§ 404.1527(c)(2) & 416.927(c)(2).

> To meet the "good reasons" requirement, the ALJ's reasons must be both specific, see Kenerson v. Astrue, No. 10-cv-161-SM, 2011 WL 1981609, at *4 (D.N.H. May 20, 2011) (citation omitted), and supportable, see Soto-Cedeño v. Astrue, 380 Fed. Appx. 1, 4 (1st Cir. 2010). In sum, the ALJ's reasons must "offer a rationale that could be accepted by a reasonable mind." Widlund v. Astrue, No. 11-cv-371-JL, 2012 WL 1676990, at *9 (D.N.H. Apr. 16, 2012) (citing Lema v. Astrue, C.A. No. 09-11858, 2011 WL 1155195, at *4 (D. Mass. Mar. 21, 2011)), report and recommendation adopted by 2012 WL 1676984 (D.N.H. May 14, 2012).

Jenness v. Colvin, No. 15-cv-005-LM, 2015 WL 9688392, at *6 (D.N.H. Aug. 27, 2015).

The ALJ offered two reasons for discounting Dr. Skoczek's opinions: (1) their lack of support from the relatively moderate findings from Swain's mental-status examinations; and (2) their inconsistency with the fact that Swain "simultaneously maintained multiple part-time jobs," Tr. 32.[11] Supportability and consistency

---

[11] The ALJ also mentioned his finding that Swain had experienced no episodes of decompensation, but that finding is so clearly and directly addressed to one of the four Paragraph B

with the record are both factors an ALJ should consider when evaluating a medical opinion, see 20 C.F.R. §§ 404.1527(c)(3)-(4) & 416.927(c)(3)-(4), but neither factor provides a good reason for discounting Dr. Skoczek's opinion on Swain's probable absences from work.

Turning first to supportability, the ALJ says that Dr. Skoczek's opinion is not supported by Swain's mental-status examinations, which "showed no more than moderate findings," Tr. 32. In support of that explanation, the ALJ generally cites 42 pages of Dr. Skoczek's treatment notes. Leaving aside the lack of specificity in the ALJ's explanation, see McCormick, 2017 WL 4220449, at *7 (remanding where, among other things, ALJ stated that treating-source opinion "as a whole" was unsupported by and inconsistent with the record, but did not identify specific opinions or specific contradictory evidence), there are two significant problems with the ALJ's supportability analysis.

The first is the ALJ's citation of Exhibit 5F as record support for his statement that "the claimant's mental status examinations showed no more than moderate findings," Tr. 32. Exhibit 5F consists of notes documenting more than 60 office visits with Dr. Skoczek between January 5, 2015, and November 16,

---

criteria of Listings 12.04 and 12.06 that it cannot reasonably be construed as a reason for discounting Dr. Skoczek's RFC opinions.

17

2015. However, it does not appear that a single one of Dr. Skoczek's notes actually documents a mental-status examination.[12]

Moreover, even if Dr. Skoczek had recorded moderate findings on mental-status examinations, or if I were to construe the ALJ's reference to mental-status examinations not as a supportability argument, see 20 C.F.R. §§ 404.1527(c)(3) & 416.927(c)(3), but as an argument that Dr. Skoczek's opinion was inconsistent with the results of mental-status examinations administered by other providers, see 20 C.F.R. §§ 404.1527(c)(4) & 416.927(c)(4), the ALJ's argument is not persuasive. That is because he did not explain how moderate findings on mental- status examinations are inconsistent with an opinion that Swain would be absent from work more than three times a month due to his impairments or treatment for them.

Thus, this case is similar to Hatch v. Colvin, which resulted in a remand where, among other things, the ALJ rejected a treating-source opinion as "inconsistent with treatment records showing 'mostly normal exams, with nonfocal motor examination, no spinal tenderness, normal mood and appropriate affect'" but "did not indicate how nonfocal motor examinations, a lack of spinal

---

[12] The fact that Swain saw Dr. Skoczek 60 times in less than 11 months would seem to support her opinion that he would be absent from work more than three times a month because of his impairments or treatment for them. See McCormick, 2017 WL 4220449, at *8 (suggesting that large number of medical appointments would support treating source's opinion that claimant would have more than four absences per month due to impairments or treatment for them).

tenderness, normal mood, and appropriate affect were inconsistent with an opinion that [the claimant] would be absent from work more than four days per month . . .," No. 15-cv-251-JL, 2016 WL 4154707, at *7 (D.N.H. Aug. 5, 2016) (emphasis added, citation to the record omitted); see also Willey v. Colvin, No. 15-cv-368-JL, 2016 WL 1756628, at *6 (D.N.H. Apr. 7, 2016) (remanding where, among other things, "ALJ stated that [the claimant's] capacities for light lifting and light-exertion sitting and standing were 'supported by the objective findings during the period, including normal gait, good strength, and good range of motion'" but "did not explain how normal gait, good strength, and good range of motion translate into a capacity for 'light lifting and light exertion sitting and standing'") (citations to the record omitted), R. & R. adopted by 2016 WL 1733444 (Apr. 29, 2016).

The ALJ's second reason for discounting Dr. Skoczek's opinion, i.e., Swain's ability to hold down multiple part-time jobs, is also not a good reason. While Swain was working three part-time jobs at the time of his hearing, it is undisputed that, several days a week, he was between 15 and 30 minutes late for his 10-hour-a-week recess monitoring job. Swain's ability to hold down a job where he was allowed to be at least 15 minutes late for a two-hour workday, at least twice a week, is not evidence a rational mind could accept as a sufficient basis for rejecting Dr. Skoczek's opinion that Swain would be absent from work more than three times a month.

In sum, presuming that the ALJ even evaluated Dr. Skoczek's RFC opinions in the first place, his decision presents no good reason for discounting Dr. Skoczek's opinion that Swain would be absent from work more than three times a month, a limitation that would preclude any employment. Because the ALJ either failed to evaluate Dr. Skoczek's opinion on probable absence from work, or failed to give a good reason for discounting it, this matter must be remanded. Moreover, because the ALJ's evaluation of Dr. Skoczek's RFC opinions requires a remand, there is no need to consider his evaluation of Dr. Naimark's opinions on Swain's RFC.

## IV. Conclusion

For the reasons described above, the Acting Commissioner's motion for an order affirming her decision, document no. 7, is denied, and Swain's motion to reverse that decision, document no. 6, is granted to the extent that this matter is remanded to the Acting Commissioner, pursuant to sentence four of 42 U.S.C. § 405(g), for further proceedings consistent with this order. The clerk of the court shall enter judgment in favor of Swain and close the case.

**SO ORDERED.**

/s/ Paul Barbadoro
Paul Barbadoro
United States District Judge

October 29, 2018

cc: Christopher G. Roundy, Esq.
Luis A. Pere, Esq.